O. H. SJODIN AND ANOTHER v. BEN OLSON.[1]

January 22, 1937.

No. 30,549.

[1]Reported in 271 N. W. 591.

See 195 Minn. 507, 263 N. W. 543.

*Fred F. Weddel* and *McCoy & Hansen,* for relators.

*L. T. Mahaney* and *Wieland & Sullivan,* for respondent.

HILTON, JUSTICE.

*Certiorari* to review an order of the district court denying an extension of the time within which to redeem from a real estate mortgage foreclosure sale.

There were three mortgages on the property; the Olson mortgage for $6,000, a first mortgage and owned by the respondent here, which at a foreclosure sale held on November 25, 1933, was bid in by the mortgagee for $6,521.21; the Franz mortgage for $6,500, which was bid in for $6,735.52 at a foreclosure sale held at the same time as the Olson one; and the Carlsten mortgage in the amount of $3,000.

This case has been here once before. See Sjodin v. Olson, 195 Minn. 507, 508, 263 N. W. 543. Many of the facts therein set forth need not be repeated. As appears in that opinion, after one extension of the time within which to redeem had been granted to May 1, 1935, the relators made an application for a second extension. On *certiorari* to this court to review the order denying that relief, relators, on a motion to remand the case for further proceedings, set out by affidavit that "since the order was made by the district court the relators have succeeded in refinancing the mortgage, have procured satisfactions of other liens and an adjustment of taxes, and that they now have on deposit in the Farmers National Bank of Aitkin sufficient funds to pay the respondent's claim and lien

against the property and to take care of all obligations to the respondent in case they are permitted to redeem." It appearing therefrom that new conditions had arisen which made it possible for the relators to redeem, the case was remanded and they were given an opportunity to present additional evidence substantiating their claims. That they failed to do.

Relators did not succeed in refinancing the mortgage. Although they made applications to federal agencies, there was no showing that those applications were ever favorably acted upon. The unpaid taxes due at the time of the original hearing on the application for a second extension were reduced by several hundred dollars to $1,000 by the proper authorities. This $1,000 was paid by Olson, the respondent here. That money with interest due thereon has never been repaid to him. Relators covenanted in the Olson mortgage to keep the property insured against loss by fire. Having failed so to do for the years of 1934 and 1935, respondent paid the premiums thereon amounting to $70.80. No reimbursement to him has ever been made.

After the second extension had been denied, respondent and Franz on May 11, 1935, commenced actions of unlawful detainer against relators. Proceedings thereon were stayed on condition that relators pay certain monthly sums to respondent and to Franz. That arrangement was agreed to by all interested parties. No such payments were ever made. On September 7, 1935, relators were evicted from the property. On their request, respondent gave them an additional three days in which to redeem and then waited ten days before proceeding further. No redemption was made.

Respondent entered into possession, spent $147.85 for repairs, and then leased the premises for $100 per month. Subsequent thereto $319.08 additional was expended for further repairs. Relators claim that respondent at that time was only a mortgagee in possession and that therefore relators cannot be charged with those expenditures, which they allege to have been unnecessary. The property was used for restaurant purposes on the ground level and for the rental of sleeping rooms above that. It was painted and varnished; booths were put in, as the old ones had been replevined

by a creditor of relators; the plumbing was repaired and new light fixtures installed. Relators' argument that the lower court erred in finding that those repairs were necessary and not ornamental is not convincing. Whether respondent was a mortgagee in possession or not, the premises apparently would not have been of much value for the purposes leased unless the repairs had been made. None of the liens or obligations incurred because thereof have been discharged.

Relators claimed that they had sufficient money on deposit in the Farmers National Bank of Aitkin to pay in full all owed to respondent. That is not quite true. Relators entered into an agreement to sell the property to one Koukis for $10,250. Koukis deposited $9,740 in escrow in the aforesaid bank to be paid relators upon their conveying to him, by warranty deed, a clear title to the property, free from all liens and encumbrances. They deposited their warranty deed, with the name of the grantee blank, with the escrowee, and also a satisfaction of the Franz and Carlsten mortgages. Franz was to receive $1,000 from the money in the hands of the escrowee in addition to other property. Relators also deposited their checks in the amount of $494.77, to be drawn against the proceeds of such sale, if and when made, in order to discharge other obligations of theirs. The state had a judgment against them for $100.11.

The sum required to redeem included the amount due on the outstanding Olson mortgage, the expenses of the repairs necessary to make the property rentable, the taxes paid by Olson, and interest due on those various items. One thousand dollars of the amount deposited in escrow also was to be paid to Franz. The agreement to sell to Koukis necessitated a conveyance showing the title free and clear from liens and encumbrances of all kinds. Taking into account all the obligations necessary to be met out of the money to be received from the sale, if consummated, the proceeds there remaining would have been inadequate to reimburse Olson in full for the indebtedness due him. At no time did relators offer full payment to respondent. Obviously the escrowee could not release the money until all conditions of the agreement had been met. The

agreed selling price is strong evidence as to the value of the premises. The finding of the lower court that relators had no remaining equity is amply justified.

The order is affirmed.

MR. JUSTICE STONE took no part in the consideration or decision of this case.

MR. JUSTICE PETERSON, not having been a member of the court when this case was argued and submitted, took no part in its consideration or decision.

[1]Reported in 271 N. W. 122.